United States District Court
For the District of Rhode Island

John Doe,
     Plaintiff,

v.                                          C.A. No. 1-16-cv-17-S-PAS

Brown University in Providence in the
State of Rhode Island and Providence
Plantations,
     Defendant

### Defendant Brown University's
### Pre-Trial Memorandum

### Introduction

Stated succinctly, Brown University's position is that when a university disciplinary decision is challenged in court, the deference due to those decisions does not permit the court to re-try the disciplinary charge de novo.[1] The relief the court may grant is much more proscribed. If the court determines there has been a breach of a procedural right during the course of the disciplinary proceedings that substantially prejudiced the student, then the appropriate relief is a remand to the University for a re-hearing of the disciplinary charge. If the court determines no

---

[1] *Sterrett v. Cowan,* 85 F.Supp.3d 916, 936 (E.D. Mich. 2015); *accord, Sill v. Pennsylvania State University,* 462 F.2d 463, 470 (3rd Cir. 1972) (stating that it was not for the district court, "as it is not for us, to try de novo the charge against" the students); *Yu v. Vassar College,* 97 F.Supp.3d 448, 461 (S.D.N.Y. 2015) ("This Court's role, of course, is neither to advocate for best practices or policies nor retry disciplinary proceedings."); *Doe v. University of the South,* 687 F.Supp.2d 744, 755 (E.D. Tenn. 2009) ("[t]his Court's review is substantially circumscribed; the law does not allow this Court to retry the University's disciplinary proceeding"); *Gomes v. University of Maine, Sys.,* 365 F.Supp.2d 6, 14 (D. Me. 2005) (same); *see Davis v. Monroe County Bd. of Education,* 526 U.S. 629, 648 (1999) ("as we have previously noted, courts should refrain from second-guessing the disciplinary decisions made by school administrators") (internal citation omitted).

substantially prejudicial procedural breach occurred, and the plaintiff challenges the sufficiency of the evidence supporting the disciplinary finding, the court is limited to assessing the evidence that was before the hearing panel to determine if the finding of misconduct was "arbitrary and capricious." Under that standard, if the Court can identify "any discernable rational basis" for the University finding, the University's disciplinary decision is entitled to stand.

Consequently, Brown University' submits that the Court's analysis of John Doe's breach of contract claim – more specifically, breach of his educational contract claim - should begin with distinguishing between the two types of "breaches" of contract he has alleged.

First are breaches that Brown will characterize as "procedural" breach claims, alleging that certain procedural rights he was entitled to during disciplinary hearing process were violated by Brown. These claims contest procedural aspects of the hearing process but not the merits of the University's sexual misconduct finding. The second type of breach Doe alleges is one that Brown will characterize as a "substantive" breach of contract claim under which Doe contests the merits of the University's finding based upon a "sufficiency of the evidence" type of argument, asserting that the evidentiary conclusion of the Hearing Panel that he engaged in sexual misconduct was "arbitrary and capricious". Brown asserts that the distinction between a claimed "procedural" breach and a claimed "substantive" breach is important because different standards of judicial review, and different remedies, apply to each.

For those allegations where Doe claims a "procedural" breach because he was deprived of a procedural right provided by his educational contract, the Court will construe the materials that comprise the educational contract to determine whether the claimed procedural right exists – that is, is it one that a reasonable student reading the materials would expect. If there is such a procedural right under the educational contract, then the Court must consider whether the

deprivation of the right substantially prejudiced Doe, in that it would likely have changed the ultimate finding. If the Court determines that the procedural error was prejudicial, then the appropriate remedy is to remand the matter to the University for a re-hearing of Ann Roe's sexual assault complaint and a corrected procedure as instructed by the Court. Brown includes within the category of "procedural error" any error the Court might find with respect to evidence that was considered or not considered. As an example, consider evidence discovered by the Title IX investigator but not provided to the hearing panel in her report. If the Court determines that evidence should have been presented and considered, then the appropriate remedy is a remand of Roe's complaint for a re-hearing by the University where the evidence is considered by a hearing panel.

The importance of a remand as the appropriate remedy is undergirded by two compelling factors. First and foremost is the right of Ann Roe to have her gender discrimination claim, and the rights afforded her by Title IX, heard and decided on the merits, and if necessary, remedied in a manner that minimizes the effect of the discrimination on her educational experience. Second is Brown University's obligation and responsibility under federal law to address such claims as a "first responder" under the federal scheme, as well as Brown's institutional right to autonomy in implementing and teaching a standard of cultural norms agreed to, and expected by, its campus community.[2]

Although remand will be the appropriate remedy in the vast majority of circumstances (presuming the Court finds some fault with the hearing process that substantially prejudiced Doe), the law does recognize a very limited and circumscribed circumstance where a court may

---

[2] "Brown University is committed to establishing and maintaining a safe learning, living, and working environment where healthy, respectful, and consensual conduct represents the campus cultural norm." 2015/16 Title IX Policy, ECF No. 19-5 at 2.

address a "substantive" breach of contract claim by examining the sufficiency of the evidence in support of a finding of responsibility in a University disciplinary process – a claim that Doe has made here. First, such a merits-based review is limited to cases where there is no procedural error that can be remedied by a remand. Second, the Court's review is limited to the record before the University hearing panel, a perspective similar to a trial court's review of an administrative agency decision – Doe is not entitled to a trial de novo with respect to Ann Roe's complaint in this federal court. Third, and finally, the Court's "sufficiency of evidence" review is limited to the most deferential standard of review – whether the finding was so contrary to the weight of the evidence before the hearing panel that the panel's finding may be characterized as "arbitrary and capricious."

As a consequence of these limitations; the long-standing judicial reluctance to interfere with the internal disciplinary decisions of colleges and universities; and the recognition of the substantial autonomy that private schools possess to make such decisions, an outright reversal of a university's disciplinary decision that forecloses any further opportunity for educational institution to address the complaining student's claim of gender discrimination in the educational environment should be a rare and unusual judicial act.

### Applicable Legal Principles and Case Authorities[3]

As a preliminary matter it will be helpful to identify four Brown University documents implicated by Doe's complaint and describe how they will be referred to in the text that follows. First is the 2014/15 Code of Student Conduct ("2014/15 Code") that was in place at the time of

---

[3]   Doe has invoked the diversity jurisdiction of this Court pursuant to 28 U.S.C. § 1332, and therefore the substantive law that governs this case is that of Rhode Island. *See Erie v. Tompkins,* 304 U.S. 64 (1938).

the alleged sexual misconduct that did not define or describe "consent" or "coercion" with respect to sexual misconduct. Second is the 2015/16 Sexual and Gender-Based Harassment, Sexual Violence, Relationship and Interpersonal Violence and Stalking Policy ("2015/16 Title IX Policy") that was adopted after the alleged sexual misconduct but was in place at the time Ann Roe filed her complaint and during Doe's disciplinary proceedings, which did define and describe "consent" and "coercion" with respect to sexual misconduct, then described as sexual assault. Third is the 2015/16 Complaint Process Pursuant to the University Sexual and Gender-Based Harassment, Sexual Violence, Relationship and Interpersonal Violence and Stalking Policy ("2015/16 Complaint Process") adopted after the alleged sexual misconduct but in place at the time of Doe's disciplinary proceedings. And fourth, is the 2015/16 Code of Student Conduct ("2015/16 Code") adopted after the alleged sexual misconduct and which incorporated by reference the descriptions of "consent" and "coercion" set forth in the 2015/16 Title IX Policy.

There is no dispute that Doe was charged with violations of the 2014/15 Conduct Code which would govern the substance of the offense he may or may not be found responsible for, but that the 2015/16 Complaint Process would govern the procedures for investigating and hearing Roe's complaint.


*** Breaches of Procedural Contract Rights
    Alleged by Doe***

**Consent and Coercion**: At the time of Doe's alleged sexual misconduct in November 2014, the Section III of the 2014/15 Code designated "Sexual Misconduct" as a prohibited offense, describing it as "non-consensual physical contact of a sexual nature."  ECF 19-4 at 5.

Although "consent" was not explicitly defined or otherwise described in the 2014/15 Code, a "Comment" section underneath the description of sexual misconduct noted that the term "encompasse[d] *a broad range of behaviors, including* acts using force, threat, intimidation, or advantage gained by the offended student's mental or physical incapacity or impairment of which the offending student was aware or should have been aware."   ECF No. 19-4 at 5 (emphasis added).

At the time Ann Roe filed her complaint against Doe in November 2015, however, ECF No. 19-1 at 10, ¶65, Brown had adopted and promulgated its 2015/16 Title IX Policy, ECF No. 19-5, that included descriptions of "consent" and "coercion" that the 2015/16 Code  incorporated by reference. Thus "consent" was described for purposes of the 2015/16 Title IX Policy and 2015/16 Code as "an affirmative and willing agreement to engage in specific forms of sexual contact with another person. Consent requires an outward demonstration, through mutually understandable words or actions, indicating that a person has freely chosen to engage in sexual contact."   ECF No. 19-5 at 6.  Moreover, under the current 2015/16 Title IX Policy and 2015/16 Code consent "cannot be obtained through" (1) manipulation; or (2) the use of coercion or force; or (3) by taking advantage of the incapacitation of another individual."   ECF No. 19-5 at 6-7. "Silence, passivity, or the absence of resistance does not imply consent. It is important not to make assumptions; if confusion or ambiguity arises during a sexual interaction, it is essential that each participant stops and clarifies the other's willingness to continue."   ECF No. 19-5 at 7.  The 2015/16 Title IX Policy and 2015/16 Code also describe "coercion" as "verbal and/or physical conduct, including manipulation, intimidation, unwanted contact, and express or implied threats of physical, emotional, or other harm, that would reasonably place an individual in fear of

immediate or future harm and that is employed to compel someone to engage in sexual contact." ECF No. 19-5 at 7.

Because the alleged offense occurred in November 2014, Doe was charged with non-consensual "Sexual Misconduct" under Section III of the 2014/15 Code, and a hearing panel subsequently found him responsible for sexual misconduct violations under that Code.[4] But in finding that his conduct was non-consensual, the hearing panel acknowledged that they referred to the descriptions of consent and coercion set forth in the 2015/16 Title IX Policy, because they believed the description simply "codified Brown University's existing community standards with respect to maintaining a safe learning, living, and working environment where healthy, respectful, and consensual conduct represents campus cultural norms."  ECF No. 19-7 at 2 (internal quotation marks omitted).

Doe's single count for "breach of contract" asserts that the hearing panel's reference to the 2015/16 Title IX Policy descriptions constituted a procedural breach of his private educational contract in four substantially similar ways, because it was: (1) applied "to conduct that happened before Brown adopted that policy[,] ECF No. 19 at 14, ¶92; (2) it constituted "a novel definition of consent without prior notice to John[,]"  ECF No. 19 at 15, ¶95; (3) because the Appeal Panel found that the reference to the 2015/16 Title IX Policy descriptions of consent and coercion "was not procedural error[,]"  ECF No. 19 at 15, ¶94; and (4) applied after Brown University officials had "assure[d] John multiple times that only the 2014-2015 Code would apply[,]" ECF No. 19 at 14, ¶93. As Doe explained in his appeal to the Title IX Appeal Panel, the gravamen of this alleged procedural error was that, "in this instance, the 2015 Title IX Policy [and its descriptions

---

[4]  Doe was charged with, and found responsible for, a violation of Section III(a), "Sexual Misconduct that involves non-consensual physical contact of a sexual nature[,]" and Section III(b), "Sexual Misconduct that includes one or more of the following: penetration, violent physical force, or injury." ECF No. 19-4 at 6.

of consent and coercion] did not exist when Ann Roe and I met that evening at Faunce House." ECF No. 19-9 at 3.[5]

The initial question for the Court is whether it was a breach of his procedural rights under Doe's 2014/15 educational contract with Brown for the hearing panel to reference on the 2015/16 Title IX Policy descriptions of consent and coercion to determine whether he violated the 2014/15 Code. Stated differently, the question is whether the 2015/16 Title IX Policy descriptions simply codified a pre-existing cultural norm concerning "consent" and "coercion" that existed in November 2014 - of which a reasonable Brown University student should have been aware – and thus was part of Doe's educational contract with Brown at that time, or whether it created a "new" cultural norm that he could not be held accountable for.

As this Court is aware "[t]he relationship between 'a student and private university [ ] is essentially contractual in nature,' but presents 'unique qualities' that require courts to 'construe [the contract] in a manner that leaves the school administration broad discretion to meet its educational and doctrinal responsibilities.' " *Jane Doe v. Brown University, et al.,* Slip Copy, 2016 WL 3570606 * 9 (D.R.I. 2016) (quoting *Gorman v. St. Raphael's Academy*, 853 A.2d 28, 34 (R.I. 2004)). The content and terms of the private educational contract may be found in statements in student manuals and registration materials[6]; written guidelines, policies, and

---

[5] The claim of breach of contract based on the representations of Brown University officials made after Ann Roe filed her complaint - a year after the alleged misconduct - sound more in the nature of promissory estoppel than a breach of his written educational contract with Brown. Promissory estoppel is defined as a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promise, and a key element of promissory estoppel is reliance on the promise. *See Filippi v. Filippi,* 818 A.2d 608, 625 (R.I. 2003). Here Doe did not rely on any representations made to him *subsequent to the alleged sexual misconduct* to govern his behavior when he was with Ann Roe in November 2014.

[6] *Mangla v. Brown University,* 135 F.3d 80, 83 (1st Cir. 2008).

procedures submitted to the student over the course of their enrollment[7]; and bulletins, circulars and regulations made available to the students.[8] Under Rhode Island law, private schools are given " 'considerable latitude to formulate and enforce their own rules to accomplish their academic and educational objectives.' " *Jane Doe, supra,* (quoting *Gorman,* at 38). Judicial deference to the internal disciplinary decisions of private educational institutions under Rhode island law flows from the principle that " '[a] voluntary association [including private educational institutions] may, without direction or interference by the courts, . . . adopt . . . rules and regulations which will control as to all questions of discipline . . . and its right to interpret and administer the same is as sacred as the right to make them.' " *Jane Doe,* 2016 WL 3570606 * 9 (quoting *Gorman,* 853 A.2d at 34, in turn quoting *Edwards v. Indiana State Teachers Ass'n,* 749 N.E.2d 1220, 1225 (Ind. Ct. App. 2001)) (brackets in original).

The analytical standard for "construing" a student's "contractual" rights under the materials that comprise the private educational contract is one of "reasonable expectations" – that is, is to interpret the materials in accordance "with the parties' reasonable expectations, giving the terms [of the policy, code or other materials provided to the student] the meaning the university reasonably should expect the student to take from them." *Havlik v. Johnson & Wales University*, 509 F.3d 25, 34 (1st Cir. 2007); *accord*, *Mangla*, 135 F.3d at 83; *Walker v. President and Fellows of Havard College*, 82 F.Supp.3d 524, 528 (D.Mass. 2014). It is an objective "reasonable student" standard, *Walker*, 82 F.Supp.3d at 528-29, and just as the interpretation of contracts generally is considered a question of law for a court, *see*, e.g., *Allstate Ins. Co v. Ahlquist*, 59 A.3d 95, 98 (R.I. 2013); *Dubis v. East Greenwich Fire District*, 754 A.2d 98, 100

---

[7] *David v. Neuman University,* ___ F.Supp.3d ___ , 2016 WL 1404153 * 2 (E.D. Pa. 2016).

[8] *Suhail v. University of the Cumberlands,* 107 F.Supp.3d 748, 755 (E.D. Ky. 2015).

(R.I. 2000), so is the interpretation of a private educational contract. *Walker*, 82 F.Supp.3d at 529. When a student alleges a breach of a procedural right given to him or her under a private educational contract, the "contract" is reviewed to determine whether the procedural right "fall[s] within the range of reasonable expectations of one reading the relevant [materials]." *See Cloud v. Trustees of Boston University*, 720 F.2d 721, 724-25 (1st Cir. 1983); *Walker*, 82 F.Supp.3d at 350.

As a new student matriculating to Brown in the fall of 2013, Doe was required to complete a "Brown New Student Tutorial," because Brown deemed it "essential" that incoming students "understand the values and principles of our community."  Its purpose was to both inform them of Brown's policies and to assess their knowledge of those policies, and the tutorial included several areas of concern including "Discrimination, Harassment and Assault" policies and procedures.  Students completing that tutorial would have learned: 1) that "Brown University prohibits sexual misconduct at Brown, which his defined as non-consensual physical contact of a sexual nature[;]" 2) that if the non-consensual sexual contact includes "penetration, violent physical force and/or injury, the standard sanction is separation from the institution (i.e., suspension or expulsion)"; 3) that "consent may be invalid if there is coercion, "as well as intimidation or threat;" 4) lack of consent may include physical resistance or verbal refusal, but *does not require* physical resistance or verbal refusal; 5) that "assuming consent to sexual activity is not a good idea," that they should listen to messages from a partner and ask for clarification if there is confusion[,]" and "make sure you have consent by asking your partner what they want[.]" (Emphasis added).

The tutorial also contained a brief video created by Brown students concerning the meaning of consent intended to be the cultural norm for sexual activity in the Brown University

community.  The video is entitled "Brown Students Ask for Consent."   It consists of a series of statements by Brown University students answering the questions: "What is consent?"; and "How do you ask for consent?"  The video contains, among other answers, "Consent is asking and hearing a yes[;]" "Consent is active, not passive,  It means being fully engaged and not just going along[;]" "Consent is giving permission without feeling pressured[;]" "I do not have consent by pressuring someone, by threatening someone, by coercing someone, or by forcing someone."  With respect to knowing whether you have consent, five different students say "Ask, Ask, Ask, Ask, Ask."  That is followed by "Not now, means no[;]" "No does not mean keep trying.  It means stop[;]" "I'm not sure I'm ready, means no{;]" "Silence is not consent.  People sometimes freeze and cannot speak[;]" and "The absence of yes, means no."  The conclusion of the video is a chorus of students saying, several times, "Brown students as for consent." Moreover, as Doe acknowledged in deposition testimony, during his on-campus orientation as a freshman in September, 2013 he attended a mandatory 90 minute presentation and performance entitled, "Speak About It: A Performance about Consent, Boundaries and healthy Relationships" that addressed, among other things, how to "negotiate" consent, followed by a one-hour breakout session for smaller interactive sessions discussing consent issues. He also acknowledged that prior to November, 2014 he saw "Brown Students Ask For Consent" posters "all over campus."

Doe's breach of contract claim with respect to the issue of "consent" is based on the premise that the 2014/15 Code is the sole document that comprises his educational contract with Brown with respect to sexual misconduct.  Based on this premise he asserts that consent is absent only if there is physical force, threat or intimidation – the examples set forth in the comment section of the 2014/15 Code.  But the tutorial is also part of his educational contract.  All matriculating students are required to complete the tutorial to ensure the student understands

Brown's policies and "the values and principles" of the Brown University community –
including the expected cultural norms of the University with respect when consent to sexual
activity does and does not exist.  The tutorial, and the video, "Brown Students Ask for Consent,"
became part of Doe's educational contract when he entered Brown in the Fall semester of 2013,
was part of his educational contract at the time he was with Ann Roe in November 2014.

A comparison of the explanation of consent in the tutorial, reinforced by Doe's on-
campus orientation and the "Brown students ask for consent" campus posters of 2013 and 2014,
with the explanation of consent in the 2015-16 Title IX Policy, demonstrates the Policy's written
descriptions of consent and coercion were a codification of the University's pre-existing
expected cultural norms with respect to giving and receiving consent for sexual activity.  A
student having completed that tutorial in the fall of 2013 would reasonably expect that under
Brown University's existing policy and cultural norms, consent means "asking and hearing a
yes," and that "the absence of yes, means no."  That is consistent with the 2015/16 Title IX
Policy's subsequent codification of that norm describing consent as an "affirmative and willing
agreement" to engage in a particular sexual activity, demonstrated through "mutually
understandable words or actions," indicating the partner has "freely chosen to engage in sexual
contact." ECF No. 19-5 at 6.  A student completing the tutorial would reasonably expect that the
absence physical resistance or verbal refusal does not mean that consent for sexual activity has
been given, which is consistent with the 2015/16 Title IX Policy's statement that "silence,
passivity or the absence of resistance does not imply consent."  ECF No. 19-5- at 7.  A student
completing the tutorial would also reasonably understand that it was Brown University's policy
and expectation that students ensure they have consent by asking their partner what they want to
do, and not to assume consent, consistent with the later 2015/16 Title IX Policy statement that it

is important not to assume your partner's consent, but rather to obtain an affirmative agreement that they do.  ECF No. 19-5 at 6-7.  Lastly, a student completing the tutorial in 2013 or 2014 would reasonably understand that he or she does not have consent by pressuring or coercing their partner to engage in a particular sexual activity, consistent with the 2015/16 Title IX Policy admonition that consent cannot be obtained through manipulation or coercion.  ECF No. 19-5 at 7.

These examples demonstrate that the cultural norms Brown University was attempting to establish, and the expectation Brown had of its students with respect to sexual conduct, and more specifically with respect to consent, as described in the 2015/16 Title IX Policy was a codification of expected cultural norms and University policy that already existed and was communicated to new students at least as early as a year prior to Doe's alleged sexual misconduct – and not a codification of new cultural norms or a new policy. The descriptions of consent and coercion were therefore part of Doe's educational contract with Brown University from the time he matriculated, and the hearing panel's reference to the 2015/16 Title IX Policy descriptions did not breach Doe's contractual relationship with Brown.

*Grounds for Appeal*:  The second procedural breach asserted by Doe is with respect to his appeal of the Panel's decision.  Doe asserts that Brown breached the contract "by refusing to consider [on appeal] whether the panel's decision [was] arbitrary or unsupported by the evidence."  ECF No. 34 at 15, ¶97. But no student reading either the 2014/15 Code, or more importantly the 2015/16 Complaint Process that governed the disciplinary procedures being applied to Roe's complaint, would have reasonably expected the language of either to have afforded them a *right* to appeal on the grounds that the panel decision was either "arbitrary" or "unsupported by the evidence."   The 2014/15 Code states that an appeal "will normally be

considered" under only two circumstances:  "relevant new evidence that was not available" at the time of the hearing before the panel; or where the hearing panel committed a "substantial procedural error," such that it "may have affected the decision" of the hearing panel.  ECF No. 19-4 at 12.  The phrase "will normally be considered only when" is not language capable of creating an expectation of a *right* to appeal on any ground except the two that are stated. Because the 2014/15 Code does not give a student a right to appeal on any ground except "new evidence" or "substantial procedural error," the appellate panel's decision not to consider an appeal based on the weight or sufficiency of evidence, is necessarily not a breach of a *right* belonging to Doe under his educational contract with Brown as defined by the 2014/15 Code.

The analysis is similar, but more compelling, with respect to the grounds upon which a student has a right of appeal under the language of the 2015/16 Complaint Process that actually governed the disciplinary process. There, the right to appeal is expressly limited to a claim of "substantial procedural error that materially affected the outcome" and/or "material new evidence not reasonably available at the time of the panel hearing.  Thus no student could reasonably expect a "right" to appeal on any ground other than those two, and thus the failure to permit an appeal based upon the weight or sufficiency of the evidence cannot be a breach of the express terms of the 2015-16 Complaint Process.[9]

---

[9]  Doe also claims Brown breached his educational contract "by refusing to allow the appeals panel to consider his sur-reply." ECF No. 34 at 15, ¶ 98. First, the 2015/16 Complaint Process only speaks to an appeal - it does not mention or authorize replies or sur-replies. Moreover, his sur-reply was actually a claim that Ann Roe's response to his appeal filed by Ann Roe contained a misrepresentation concerning the text of the 2014/15 Code - and thus was itself a violation of the Code. ECF No. 19-11 at 2. Thus, the purpose of Doe's sur-reply was two-fold – to advise the appeals panel of the misrepresentation for purposes of his appeal, and to initiate a conduct violation investigation against Roe. Doe does not allege, however, that the appeals panel affirmed the decision of the hearing panel because of Roe's misrepresentation of the Code, and therefore could have no causal relationship to the harm he seeks to have remedied in any event – the adverse finding of responsibility.

For the foregoing reasons, Brown University asserts that the evidence will show that there was no breach of Doe's educational contract with respect to any procedural right.[10]

### Was a Breach of a Procedural Contract Right
   ### Causally Related to the Adverse Determination?

Even if the Court determines there was a breach of a procedural right under the private educational contract, then the Court must determine whether the breach of that procedural right in the disciplinary process caused the harm claimed – that is, the adverse finding of responsibility. "To succeed on a breach of contract claim under Rhode Island law, a plaintiff must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and *(3) the breach caused (4) damages to the plaintiff." Barkan v. Dunkin' Donuts, Inc.*, 627 F.3d 34, 39 (1st Cir. 2010) (emphasis added) (citing *Petrarca v. Fid. Cas. Ins. Co.*, 884 A.2d 406, 410 (R.I. 2005)). With respect to the third element – causation – the plaintiff must prove that the defendant's breach of the contract was the "but for" cause of the damages plaintiff seeks to recover. *Id.* at 40 (citing *Wells v. Uvex Winter Opitcal, Inc.*, 635 A.2d 1188, 1191 (R.I. 1994)); *see also Petrarca*, 884 A.2d at 410 (plaintiff "must not only prove the existence and breach of a contract, he also must prove that defendant's breach thereof caused him damages"). Stated somewhat differently, a student, such as Doe, alleging a procedural breach of his

---

[10]   Doe's complaint makes a brief reference to "the implied covenant of good faith and fair dealing." ECF No. 19 at 15 ¶ 100. Although Rhode Island law recognizes an implied covenant of good faith and fair dealing is inherent in a contract, the implied covenant may not be used to rewrite the contract, *see T.G. Plastics Trading Co., Inc. v. Toray Plastics (America), Inc.*, 958 F.Supp.2d 315, 326, 327 (D.R.I. 2013), and not every breach of contract necessarily involves a breach of the covenant. "[I]f there is no breach of contract, then there can be no breach of the covenant." *Honda Corp. v. Polymer Research Corp. of America*, 275 F.Supp.2d 229, 237 (D.R.I. 2003). Thus, Doe's reference to that implied covenant does not alter the Court's breach of contract analysis or the conclusion that there was no breach.

educational contract must show that if the procedural violation *had not occurred,* he or she would not have been found responsible for the misconduct alleged, and therefore would not have suffered the damages flowing from that finding. The causation element of Doe's breach of contract claim with respect to the University's adjudication of the sexual misconduct complaint made against him is essentially the same as a "substantial prejudice" or "harmless error" analysis.

When Doe claims a procedural violation occurred during the adjudication of Ann Roe's complaint, he is in essence making a claim the that he was deprived of a "contractual due process right," and it is analogous to a claim by a public university student claiming he or she was deprived of a Fourteenth Amendment "constitutional due process right" during his or her disciplinary process. To prevail on procedural due process challenge based upon the Due Process Clause the plaintiff "must show substantial prejudice from the allegedly inadequate procedure." *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1242 (10th Cir. 2001). He or she "must show that the due process violations led to a substantially different outcome from that which would have occurred in the absence of those violations." *Graham v. Mukasey*, 519 F.3d 546, 549-50 (6th Cir. 2008).  A claim by a student at a private university that they were deprived of procedural process right under their educational contract with the university is in all material respects similar to a Fourteenth Amendment Due Process claim against a public university - the only difference is the source of the claimed procedural right – in the latter case the required procedures are derived from the Fourteenth Amendment, and in the former case they are derived from the private educational contract. Therefore the causation element of a breach of contract claim attacking an internal disciplinary finding at a private university is equivalent to the

"substantial prejudice" element of 14th Amendment Due Process claim against a public university – would the outcome have been different if the violation had not occurred.

The causation analysis for a breach of educational contract claim is also analogous to "harmless error" analysis. Doe's "breach of contract" claim has been brought for the purposes of attacking an "adjudication" made in an internal university disciplinary process and therefore also has qualities analogous to judicial review of a lower court or administrative agency decision. In both of those contexts courts apply a 'harmless error" standard under which the lower court or agency determination is set aside only if the error affects the "substantial rights" of the party asserting the error. *See Shinseki v. Sanders,* 556 U.S. 407-409 (2009); *see also* 28 U.S.C. § 2111 (federal harmless error statute); R.I.R. Civ. P. 61 (Rhode Island harmless error rule). The harmless error rule grew out of criticism of the practice of reversing for error "regardless of the effect on the judgment[,]" and applies to judicial review of both judicial and administrative proceedings. *Shinseki v. Sanders,* 566 U.S. 396, 409 (2004) (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)). The party seeking to set aside the judgment of a lower court or the decision of an administrative agency based upon an alleged error, has the burden of showing that the error prejudiced the party's substantial rights, *see id.,* and involves consideration of case-specific factors such as an estimation of the likelihood that the result would have been different absent the error. *Id.* at 411. Brown University asserts that harmless error analysis also applies generally to claims for breach of a private educational contract arising out of a disciplinary process, in addition to the "substantial prejudice" principle argued above.

**Remedy for Breach of a Procedural**
   **Contract Right**

If the Court determines that the hearing process violated a procedural right Doe was entitled to under his educational contract, and if the Court determines that the procedural violation was substantially prejudicial – that is, it was a "but for" cause of the hearing panel's adverse determination – the next question for the Court is the appropriate remedy for that violation. Brown asserts the appropriate remedy is a rehearing within the university process that affords Doe the procedural rights the Court determines he was deprived of.

Just as was argued with respect to the causation analysis, procedural due process cases provide the appropriate analogy. *See Doe v. Rector and Visitors of George Mason University*, ___ F.Supp.3d ___, 2016 WL 1574045 (E.D. Va. 2016) ("*Rector*"). *Rector* involved a procedural due process challenge to a disciplinary proceeding at a public university resulting in a finding of sexual misconduct and the plaintiff's expulsion. *Id.* * 2. In a prior decision the court had found in favor of the plaintiff's procedural due process claim, and then accepted further briefing and argument on what the appropriate remedy should be. *Id.* * 1-2. The parties agreed that it was appropriate to vacate the finding of responsibility, reinstate the plaintiff to the student status he held prior to the adverse determination, and to remove any reference to the expulsion from his record, *Id.* * 3 and note 8. The parties disagreed, however, on whether the University should be allowed to pursue further disciplinary hearings. *Id.* The court agreed the University should be permitted to pursue further disciplinary proceedings, noting that "the typical remedy for a violation of [procedural] due process in the university disciplinary process is more process[.]" *Id.* * 4 (citing *Furey v. Temple University*, 884 F.Supp.2d 223, 261 (E.D. Pa. 2012) (ordering reinstatement unless the wrongfully expelled student is afforded a new hearing that

comports with due process)); *accord, University of Texas Medical School v. Than,* 901 S.W.2d 926, 933 (Tex. 1995) ("the remedy for a denial of due process is due process"); *see Perry v. Sinderman,* 408 U.S. 593, 603 (1972) (upon proof of protected interest, professor whose contract was not renewed is not entitled to reinstatement but to a hearing comporting with due process).

Significantly, the *Rector* court's analysis and conclusion was substantially informed by the university's Title IX obligation to investigate and address allegations of sexual misconduct. *Id.* \* 5. The court recognized that the university's "obligations under Title IX arise from a legislative and administrative judgment by politically accountable entities that sexual misconduct allegations on university campuses must be taken seriously[,]" and that "judgment cannot be lightly undermined." *Id.* Moreover, the allegedly injured party who makes a sexual assault complaint does not control the proceedings, and it goes too far to issue an injunctive order that would deprive an alleged victim of gender discrimination under Title IX of a possible remedy for that discrimination because the university did not provide the respondent with the necessary procedural protections – whether they originate in the due process clause or in a private educational contract. *See id.* The *Rector* court recognized that where "a public university violates the requirements of [procedural] due process, the intervention of the Federal courts is clearly warranted if the injured party files suit[, b]ut to step beyond restoring an aggrieved plaintiff to the *status quo ante*" is a step further than equity allows. *Id.* \* 6. Defendant Brown University asserts that the same remedy analysis is applicable in the context of a private university, where a court determines that certain procedural rights provided by the educational contract to the respondent are found to have been violated.

To enjoin Brown from rehearing Ann Roe's complaint, with the added procedural protections of which the Court might find Doe was wrongfully deprived, would result in two

harms.   First, it would unfairly deprive Ann Roe of a possible remedy for the gender discrimination she alleges, gender discrimination that would have the effect of depriving her of the full benefits of her educational experience.   Second, it would prohibit Brown University from fulfilling its responsibilities and obligations under Title IX, and substantially interfere with the University decision-making autonomy, as well as its "considerable latitude to formulate and enforce [its] own rules to accomplish [its] academic and educational objectives."   *Jane Doe v Brown University*, 2016 WL 3570606 at \* 9 (quoting *Gorman v. St. Raphael Academy*, 853 A.2d 28, 39 (R.I. 2004)). The appropriate remedy for a procedural breach of an educational contract, that strikes the proper balance between the role of the court and the prerogative and responsibility of a private educational institution, is a remand to the institution for a new hearing. *See Gorman v. University of Rhode Island,* 646 F.Supp. 799, 814 (D.R.I. 1986), *affirmed in part, reversed in part,* 837 F.2d 7 (1st Cir. 1988) (declining to review weight of evidence argument because the defendants' due process violation entitled plaintiff to a "disciplinary hearing *de novo*" rendering the weight of evidence claim "moot").

### Substantive Breach of Contract – Review of Merits of Sexual Misconduct Finding

Distinct from claims Doe's claims that Brown breached his procedural rights under the educational contract, Doe also seeks this Court's review of the sufficiency of the evidence supporting the ultimate the hearing panel's sexual misconduct finding. He asserts Brown breached the educational contract "by reaching a decision on Ann's complaint that [was] arbitrary and capricious." ECF No. 19 at 15, ¶ 96.

Brown agrees that the "arbitrary and capricious" is the correct standard of review to apply under Rhode Island law to any evaluation of the evidence in support of the sexual misconduct

finding, because it reflects the general rule of noninterference in the disciplinary matters of private schools as recognized by the Rhode Island Supreme Court. As stated earlier, in *Gorman v. St. Raphael Academy,* the court emphasized, albeit in dicta, that "[p]rivate schools must have considerable latitude to . . . enforce their own rules to accomplish their academic and educational objectives." 853 A.2d at 39. Because a private educational institution "sustains essentially voluntary relationships between itself, its students and its faculty[,]" *Bilut v. Northwestern University*, 269 Ill.App.3d 125, 134, 645 N.E.2d 536, 542, 206 Ill.Dec. 531, 537 (1994), the right of a voluntary association to interpret and administer rules and regulations on questions of discipline or internal policy "is as sacred as the right to make them[,]" to permit the institution to foster its chosen educational policies and goals. *Id.* at 38 (internal citations omitted). Although *Gorman* did not specifically address the question of the appropriate standard for judicial review of a private institution's application of its rules to a particular member, *King v. Grand Chapter of Rhode Island Order of Eastern Star,* 919 A.2d 991 (R.I. 2007), did. *King* held that "judicial incursion into the affairs of a private voluntary association" is warranted only where the organization's application of its rules to the member is "arbitrary and capricious." 919 A.2d at 998.

By definition the arbitrary and capricious standard of review is not de novo review, and it is well-settled that a "court's review of the university's decision is substantially circumscribed, the law does not allow the court to retry the university's disciplinary proceeding." *Sterrett v. Cowan,* 85 F.Supp.3d 916, 936 (E.D. Mich. 2015); *accord, Sill v. Pennsylvania State University,* 462 F.2d 463, 470 (3rd Cir. 1972) (stating that it was not for the district court, "as it is not for us, to try de novo the charge against" the students); *Yu v. Vassar College,* 97 F.Supp.3d 448, 461 (S.D.N.Y. 2015) ("This Court's role, of course, is neither to advocate for best practices or

policies nor retry disciplinary proceedings."); *Doe v. University of the South,* 687 F.Supp.2d 744, 755 (E.D. Tenn. 2009) ("[t]his Court's review is substantially circumscribed; the law does not allow this Court to retry the University's disciplinary proceeding"); *Gomes v. University of Maine, Sys.,* 365 F.Supp.2d 6, 14 (D. Me. 2005) (same); *see Davis v. Monroe County Bd. of Education,* 526 U.S. 629, 648 (1999) ("as we have previously noted, courts should refrain from second-guessing the disciplinary decisions made by school administrators") (internal citation omitted). Courts not only restrain themselves from re-trying the disciplinary charges anew in a federal (or state) court trial, however, they also limit the arbitrary and capricious review to the record as it was before the university decision-maker – to determine whether *that* decision based on *that* evidence was arbitrary and capricious. *See Sill,* 462 F.2d at 470. By specifically invoking the arbitrary and capricious standard of review in his complaint, Doe has effectively conceded this limited judicial review applies to his attack on the finding of sexual misconduct.

Stating that "arbitrary and capricious" is the applicable standard of review, however, does not by itself describe what sort of review it actually is, other than it is limited to a review of the evidence that had been before the original fact-finder, and that the court does not review the evidence de novo. But this Court has given the phrase content in the context of judicial review of decisions by ERISA plan administrators. There it has described the arbitrary and capricious standard as the "least demanding from of judicial review[,]" requiring only that the determination being reviewed be "rational . . . as well as reasonable with no abuse of discretion." *Massey v. Stanley-Bostich, Inc.,* 255 F.Supp.2d 7, 11 (D.R.I. 2005) (internal citation omitted). Refined more precisely, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, the outcome is not arbitrary and capricious[,]" and consequently under this definition a "reasonable" decision is also a "rational" decision. *See id.*

Therefore in the context of academic and disciplinary decisions by universities, courts have held that such decisions are not arbitrary and capricious if there is "any discernable rational basis" that supports it. *See, e.g., Salinas v. Palo Alto University,* Slip Copy, 2016 WL 3068404 * 2 (N.D. Calif. 2016); *Holert v. University of Chicago,* 751 F.Supp. 1294, 1301 (N.D. Ill. 1990); *compare Davis v. U.S.E.P.A.,* 348 F.3d 772, 781 (9th Cir. 2003) (describing arbitrary and capricious standard of review under the Administrative Procedures Act as "no discernable rational basis for the agency's action"). Thus, under arbitrary and capricious review, even if this Court were to disagree with the University's finding of responsibility, and even if Doe is able to offer a competing reasonable interpretation of the evidence, if the Court is able to discern any rational basis that supports the University's finding of responsibility, its finding is entitled to remain undisturbed. *Cf. Massey,* 255 F.Supp.2d at 11.

## Conclusion

In conclusion, Brown University reiterates where it started. It is well-settled that, when a university disciplinary decision is challenged in court, the deference due to those decisions does not permit the court to re-try the disciplinary charge de novo. The relief the court may grant is much more proscribed. If the court determines there has been a breach of a procedural right provided by the educational contract during the course of the disciplinary proceedings, that substantially prejudiced the student, then the appropriate relief is a remand to the University for a re-hearing of the disciplinary charge. If the court determines no substantially prejudicial procedural breach occurred, and the plaintiff challenges the sufficiency of the evidence supporting the disciplinary finding, the court is limited to assessing the evidence that was before the hearing panel to determine if the finding of misconduct was "arbitrary and capricious."

Under that standard, if the Court can identify "any discernable rational basis" for the University finding, the University's disciplinary decision is entitled to deference, and to stand.

Brown University asserts that the evidence at trial will show that there was no breach of a procedural right under Doe's educational contract with Brown, and that there was a rational basis for the hearing panel's finding that Doe was responsible for sexual misconduct in violation of the 2014/15 Code.

Brown University
By its Attorneys,

/s/ Thomas R. Bender

Thomas R. Bender, Esq. #2799
Associate Counsel
Office of the General Counsel
Brown University
Box 1913
110 South Main Street
Providence, RI 02912
Tel: (401) 863-5466
Fax: (401) 863-1120
thomas_bender@brown.edu

/s/ Steven M. Richard

Steven M. Richard (#4403)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI  02903
Tel:  401-454-1020
Fax:  401-454-1030
srichard@nixonpeabody.com

/s/ James M. Green

James M. Green, Esq. #3590
Deputy Counsel
Office of the General Counsel
Brown University
Box 1913
110 South Main Street
Providence, RI 02912
Tel: (401) 863-9977
Fax: (401) 863-1120
jmgreen@brown.edu


/s/ Beverly E. Ledbetter


Beverly E. Ledbetter
General Counsel
Brown University
Box 1913
110 South Main Street
Providence, RI 02912
Tel: (401) 863-9900
Fax: (401) 863-1120
bel_atty@brown.edu


Certificate of Service


I certify that on July 11, 2016, I caused a copy of this Defendant's Pre-Trial Memorandum to be served upon counsel of record via the Court's CM/ECF system.


/s/ Thomas R. Bender


Thomas R. Bender